UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH PULLUM,

      Petitioner,

v.                              Case No. 8:06-cv-2192-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/

## **O R D E R**

Pullum petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for armed burglary, armed robbery, and causing bodily harm with a deadly weapon while committing a felony, for which convictions Pullum serves three concurrent life sentences. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 14) The respondent offers no challenge to the petition's timeliness.

## I
## **FACTS**[1]

On June 3, 1999, at about 8:15 a.m., the victim, Annie Daniel, saw a young man walking around inside her employer's parking lot when she parked in her parking space. The young man approached and, before she exited her car, inquired about the apartments behind the building. She advised the man that she knew nothing about the

_____

[1] This summary of the facts derives from direct appeal briefs. (Respondent's Exhibits 1 and 2, respectively)

apartments, after which she thought he left.  After she exited her car and exchanged her car keys for her work keys inside her purse, she was again approached by the young man asking her about the apartments.  The victim started to unlock the front door when the man grabbed her hand.  She told him that the car keys were inside her purse.  The man grabbed the purse, shot her, and fled the parking lot in her car.  The victim described her assailant as a young, Black male, twenty to twenty-five years old, 135 to 140 pounds, and between 5'6" and 5'7" tall.[2]  The police issued a BOLO for the victim's car and the assailant.

Around 3:00 p.m. later that day, a Department of Transportation employee in Glades County found a child's car seat and numerous items beside a highway, including the victim's telephone bill and grocery store receipt that had been in the victim's purse.  Pullum's fingerprints were found on many of the items, including the victim's telephone bill and vehicle registration.

The following morning an officer for the Hollywood Police Department responded to a disturbance at a gas station.  The officer advised Pullum that he must move his car away from the gas pumps if he was not purchasing gas.  Pullum was arrested when a computer check revealed that the car was stolen.  Latent fingerprints matching Pullum were recovered from the outside of the vehicle and from items inside the vehicle.  A ballistics expert determined that the bullet recovered from the victim was fired from the loaded gun retrieved from beneath the driver's seat.  A shoe retrieved from inside the car has the same characteristics as a shoe print impression found at the crime scene.

---

[2]  Pullum was twenty-one years old, 135 pounds, and 5'6" tall.

Five days after the incident a Lakeland police detective presented the victim with two photopacks. The victim viewed each photograph in each photopack. Although still hospitalized and recovering from the shooting, the victim positively identified Pullum as her assailant.

## II
## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. <u>Wilcox v. Florida Dep't of Corrections</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert. denied</u>, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the

Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. at 412.

In per curiam decisions without a written opinion, the state appellate court affirmed both Pullum's convictions and sentences on direct appeal (Respondent's Exhibit 5) and the denial of his subsequent Rule 3.850 motion to vacate.  (Respondent's Exhibit 15 and 20)  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Pullum bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the findings of fact in the state court's rejection of Pullum's post-conviction claims. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 9 and 17) However, because the state appellate court affirmed Pullum's convictions and sentences without a written opinion on direct appeal, no findings of fact exist to which this court can defer regarding Pullum's first four grounds for relief.

Pullum must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

III
**DIRECT  APPEAL  ISSUES**

Ground One:

Pullum alleges that the trial court erred by excluding Pullum's exculpatory statements. In a pre-trial motion in limine defense counsel argued for admissibility of the exculpatory statements based on state evidentiary laws. The direct appeal opening brief

asserted similar state evidentiary arguments.  The respondent correctly argues that this

ground asserts no reviewable claim.

Federal habeas corpus review of an alleged violation of state law is limited by

statute.  "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

entertain an application for a writ of habeas corpus in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  As a general principle, alleged violations of state law simply fail to assert a

constitutional issue.

> Questions of state law rarely raise issues of federal constitutional
> significance, because "[a] state's interpretation of its own laws provides no
> basis for federal habeas corpus relief, since no question of a constitutional
> nature is involved."  Carrizales v. Wainwright, 699 F.2d 1053, 1053-54
> (11th Cir. 1983) (citations omitted).  We review questions of state law in
> federal habeas proceedings only to determine whether the alleged errors
> were so critical or important to the outcome of the trial to render "the entire
> trial fundamentally unfair."  Id. at 1054  (defective jury charge raises issue
> of constitutional dimension "only if it renders the entire trial fundamentally
> unfair"); see also Futch v. Dugger, 874 F.2d at 1487 (improperly admitted
> evidence "must be inflammatory or gruesome, and so critical that its
> introduction denied petitioner a fundamentally fair trial").  "[T]he established
> standard of fundamental fairness [when reviewing a state evidentiary
> ruling] is that habeas relief will be granted only if the state trial error was
> 'material in the sense of a crucial, critical, highly significant factor.'"  Shaw
> v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (quoting Hills v. Henderson,
> 529 F.2d 397, 401 (5th Cir. 1976)).

Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991), cert. denied, 502 U.S. 1105

(1992).  The admissibility of evidence in a state trial is largely a matter for the state to

decide without federal intervention.  See Marshall v. Lonberger, 459 U.S. 422, 438, n. 6,

(1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a

finely tuned review of the wisdom of state evidentiary rules.").  Federal review is

available only in extreme circumstances. "[I]t is normally 'within the power of the State to regulate procedures under which its laws are carried out,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Patterson v. New York, 432 U.S. 197, 201-202 (1977).

In his reply (Doc. 17) Pullum argues that the evidentiary ruling was so egregious that he was denied a fundamentally fair trial.[3] Pullum never presented a fundamental fairness argument to the state courts. A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971). Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a

---

[3] Because Pullum asserted no constitutional basis for ground one until his reply, the respondent has not had an opportunity to assert an exhaustion challenge. Nevertheless, the exhaustion doctrine precludes review of an unexhausted claim unless the respondent specifically waives the procedural default. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." McNair v. Campbell, 416 F.3d 1291,1305 (11th Cir. 2005), cert. denied, 547 U.S. 1073 (2006). The respondent has not expressly waived the exhaustion requirement.

petitioner must present to the federal court the same claim presented to the state court.

Picard v. Connor, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to exhaust."  Duncan v. Henry, 513 U.S. at 366.

Moreover, the petitioner must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

Baldwin v. Reese, 541 U.S. 27, 32 (2004).  As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982).  See also Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."), Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."), Kennedy v.

Herring, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), appeal after remand, Kennedy v. Hopper, 156 F.3d 1143 (11th Cir.), cert. denied sub nom Kennedy v. Haley, 526 U.S. 1075 (1999).

As a general proposition, a federal court is precluded from addressing the merits of a procedurally defaulted ground unless the petitioner can show "cause and prejudice" or "manifest injustice." Coleman v. Thompson, 501 U.S. 72, 29-30 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986). "Cause" must ordinarily be something external to the defense. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).

To meet the fundamental miscarriage of justice exception, Pullum must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the

crime of conviction." Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995)[4] (denying certificate of probable cause).

Ground one presents only a state law evidentiary issue that is not subject to federal habeas review. Pullum's fundamental fairness argument is unexhausted and procedurally defaulted. Pullum fails to show either cause and prejudice or manifest injustice to overcome the procedural default. Consequently, Pullum is not entitled to relief on ground one.

Ground Two:

Pullum alleges that the trial court erred by failing to strike a prospective juror for cause. Pullum raised this claim on direct appeal (Respondent's Exhibit 1 at 18) and the state argued that the claim was not properly preserved. (Respondent's Exhibit 2 at 11) The state appellate court affirmed the conviction in a per curiam decision without a written opinion. (Respondent's Exhibit 5)

The respondent correctly argues that Pullum procedurally defaulted this claim. Pullum had exercised all of his peremptory strikes before Mrs. Darrow joined the jury panel. (Respondent's Exhibit 26, vol. II at 150) Mrs. Darrow completed the jury of six. (Respondent's Exhibit 26, vol. III at 190) After selecting an alternate, Pullum's trial counsel "ma[de] a comment just for the record" regarding Mrs. Darrow. The trial judge interpreted the comment as a challenge for cause, which he rejected. (Respondent's Exhibit 26, vol. III at 191) Thereafter defense counsel offered no objection to the jury.

---

[4] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

To summarize the procedural default argument asserted on direct appeal, Pullum failed to request that the trial court grant an additional peremptory challenge and failed to renew an objection before the jury was sworn.

Generally, before a claim is procedurally barred from federal review, a state court must reject reviewing the incorrectly presented claim.

> Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."

Harris v. Reed, 489 U.S. 255, 262 (1989), quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). But because the appellate court issued no written opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. at 261, quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983). However, because on direct appeal the state argued procedural default, an argument not rejected, the state court is presumed to have applied the state's procedural default rule. Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."), cert. denied, 490 U.S. 1071 (1989); Nichols v. Wainwright, 783 F.2d 1540, 1542 (11th Cir. 1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion."). Consequently, Pullum procedurally defaulted ground two. Pullum fails to

show either cause and prejudice or manifest injustice to overcome the procedural

default.  Consequently, Pullum is not entitled to relief on ground two.

Ground Three:

Pullum alleges that the trial court erred by not conducting a competency hearing

to determine Pullum's competency.  The trial judge granted defense counsel's "Motion

for Appointment of Committee to Evaluate Sanity at the Time of Offense and to

Determine Competency to Proceed." (Respondent's Exhibit 26, vol. I at 93)  After

Pullum's mental examination defense counsel represented that the preliminary reports of

the examining doctors indicate that Pullum was competent.  (Respondent's Exhibit 26,

vol. IX at 259-60)  Thereafter Pullum's competency remained unchallenged.

The standard for determining whether a competency hearing is required is

discussed in Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987).

> The failure to observe procedures adequate to protect a defendant's right
> not to be tried or convicted while incompetent to stand trial deprives him of
> his due process right to a fair trial.  Drope v. Missouri, 420 U.S. 162, 172,
> 95 S. Ct. 896, 904, 43 L. Ed.2d 103 (1975); Pate v. Robinson, 383 U.S.
> 375, 384-86, 86 S. Ct. 836, 841-42, 15 L. Ed.2d 815 (1966).  Due process
> requires that an adequate hearing be held on competency when the
> evidence raises a "bona fide doubt" as to a defendant's competence to
> stand trial.  See Drope, 420 U.S. at 172-73, 95 S. Ct. at 904-05; Pate, 383
> U.S. at 385, 86 S. Ct. at 842.  This court has relied on Pate to hold that
> when a court has a "bona fide doubt" as to a defendant's competence, it
> must sua sponte conduct a hearing on his competence to stand trial.  See
> Hance, 696 F.2d at 948; Scarborough v. U.S., 683 F.2d 1323, 1324 (11th
> Cir.), reh'g denied, 690 F.2d 907 (1982), cert. denied, 459 U.S. 1220, 103
> S. Ct. 1225, 75 L. Ed.2d 460 (1983).  If the trial court ignores a bona fide
> doubt as to the defendant's competency, Pate requires a nunc pro tunc
> competency hearing as long as a meaningful inquiry into the defendant's
> competency can still be made.  Hance, 696 F.2d at 948.  If such a
> meaningful inquiry is no longer possible, the defendant must be retried, if
> found competent, or released.  Id.

Pullum incorrectly argues that a competency hearing was required because the trial court had authorized the competency examination. Pullum fails TO show a "bona fide doubt" about his competency, a showing required by Drope and Pate. As a consequence of this failure, no competency hearing was required. The trial court properly relied on defense counsel's representation that the mental health experts opined that Pullum was competent. The respondent correctly describes Pullum's behavior at trial as "vociferous, rude, and foul-mouthed," but "this behavior alone did not cast doubt on his ability to consult with his lawyer with a reasonable degree of rational understanding or maintain a rational as well as factual understanding of the proceedings against him." The state appellate court's per curiam affirmance was neither an unreasonable determination of the facts nor contrary to or an unreasonable application of clearly established law.

Ground Four:

Pullum alleges that the trial court erred by not exploring defense counsel's potential conflict of interest. Two months after his appointment, Pullum's third attorney,[5] Allen R. Smith, advised the trial court that Pullum might believe that counsel had a conflict of interest.

> MR. SMITH: In going over some of the discovery, I found that the victim in the armed robbery case is the mother of a former employee of mine. I don't know the woman, but I've advised Mr. Pullum there may be a conflict in his mind or maybe a suggestion of a conflict. I just wanted to bring it to the court's attention. And he is not sure whether it's a conflict in his mind or I'm not sure if he wants me to represent him or not. He's not sure about that.

---

[5] Pullum's first two appointed counsel were allowed to withdraw because Pullum had threatened to kill each.

THE COURT:  It doesn't matter.  Are we talking 5008?

[PROSECUTOR]:  I think you're talking about 98-3461, Your Honor.

THE DEFENDANT:  Talking about a life felony is what we're talking about.

THE COURT:  Mr. Pullum, we're not going to do that.  3461.  Are you ready for trial?

MR. SMITH:  No sir.

. . . .

MR. SMITH:  I told Mr. Pullum that I would mention that to the court.  I'm not asking the court to excuse me at this time.

THE COURT:  I understand.

MR. SMITH:  I wanted the court to be aware of that.

(Respondent's Exhibit 26, vol. VIII at 238-40)  Trial commenced nearly five months later. Neither defense counsel nor Pullum again expressed a concern about a potential conflict of interest.[6]

The Sixth Amendment right to counsel is a fundamental right.  United States v. Cronic, 466 U.S. 648, 654 (1984) ("An accused's right to be represented by counsel is a fundamental component of our criminal justice system."), Argersinger v. Hamlin, 407 U.S. 25, 32 (1972) ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.").  However, the Sixth Amendment does not guarantee that a defendant will receive the appointment of counsel of his choice, Wheat v. United States, 486 U.S. 153 (1988), or that the defendant will have a meaningful attorney-client relationship.  Morris v. Slappy, 461 U.S.

---

[6] The record shows that Pullum was certainly not inhibited from speaking out whenever he desired.

- 14 -

1 (1983).  See also United States v. Cronic, 466 U.S. at 657, n.21 ("[T]he appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.").  But a criminal defendant is entitled to the assistance of an attorney who has no interest other than that of the defendant.

A conflict of interest must be actual, not merely potential.  "[T]he possibility of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).  Consequently, to prevail on a claim of conflict of interest, a petitioner must show that (1) there was an actual conflict and (2) the conflict adversely effected counsel's performance.

To prove an actual conflict, "[t]he defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence that favors an interest in competition with that of the defendant."  Buenoano v. Singletary, 74 F.3d 1078, 1086 n.6 (11th Cir. 1996) (citations omitted).  "To prove adverse effect, a habeas corpus petitioner must show:  (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense."  Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001), cert. denied, 535 U.S. 970 (2002).

Defense counsel disclosed to the trial court that Pullum might think that counsel had a conflict, but counsel never admitted the existence of an actual conflict of interest.

Pullum fails to show both an actual conflict and an adverse effect. Consequently, the state appellate court's affirmance was neither an unreasonable determination of the facts nor contrary to or an unreasonable application of clearly established law.

IV
**POST-CONVICTION  ISSUES**
**INEFFECTIVE  ASSISTANCE  OF  COUNSEL**

Pullum claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we

are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is

strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at

690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the time

of counsel's conduct."  466 U.S. at 690.  Strickland requires that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."  466 U.S. at 690.

Pullum must demonstrate that counsel's error prejudiced the defense because

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting

aside the judgment of a criminal proceeding if the error had no effect on the judgment."

466 U.S. at 691-92.  To meet this burden, Pullum must show "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."

466 U.S. at 690-91.  Pullum cannot meet his burden merely by showing that the avenue

chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the

circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Pullum must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The state court denied the claims of ineffective assistance of counsel with the following introduction.

> As stated by the Florida Supreme Court in Spencer v. State, 842 So. 2d 52, 61 (Fla. 2003):
>
> > In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that the outcome of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668, 687 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  See id. at 694. In reviewing counsel's performance, the court must be highly deferential to counsel, and in assessing the performance, every effort must "be made to eliminate the distorting effects of hindsight,

> to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689; see also Rivera v. Dugger, 629 So. 2d 105, 107 (Fla. 1993). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; see also Cherry v. State, 659 So. 2d 1069, 1072 (Fla. 1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695; see also Valle v. State, 705 So. 2d 1331, 1333 (Fla. 1997). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

(Respondent's Exhibit 17 at 2) Because the state court correctly recognized that Strickland governs each claim of ineffective assistance of counsel, Pullum cannot meet the "contrary to" test in Section 2254(d)(1). Pullum instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts.

Ground Five:

Pullum alleges that his trial counsel rendered ineffective assistance by not filing the state required notice of the expiration of the 175-day speedy trial rule. Pullum's specific claim is that trial counsel was ineffective for not enforcing a state rule, not that Pullum was denied his constitutional right to a speedy trial. Only the violation of a constitutional right, not the violation of a state right, is reviewable in a federal petition for the writ of habeas corpus. The constitutional right to speedy trial is not restricted by deadlines established by a state's rules of procedure. "The States, of course, are free to prescribe a reasonable period consistent with constitutional standards . . . ." Barker v. Wingo, 407 U.S. 514, 523 (1972). Accord Routly v. Singletary, 33 F.3d 1279, 1291 (11th Cir. 1994) ("Routly argues, inter alia, that because the length of delay in prosecution was

beyond that allowed under the Florida rule, he was denied his right to a speedy trial. The Court notes that nowhere in the United States Constitution is there found a right to be brought to trial within 180 days."), cert. denied, 515 U.S. 1166 (1995). Pullum presents no argument to meet Strickland's deficient performance requirement.[7] Consequently, the state court's rejection of this claim is not an unreasonable application of controlling federal law as determined by the Supreme Court.

Ground Six:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to object to the state returning the purse to the victim instead of retaining it in evidence. The state post-conviction court rejected this claim as follows:

> In support of Claim 2, Defendant argues that by allowing the victim to retrieve her purse, an item stolen during the offense, he was prevented from showing the jury that his fingerprints were not on the purse. In its Response, the State argues the fact of whether Defendant's fingerprints were or were not on the purse would not have overcome the weight of evidence presented at trial by the State. Specifically, the State argues the evidence of guilt presented by the State included positive identification of the Defendant by the victim, the fact that Defendant was found in possession of the victim's car when the car was located, Defendant's fingerprints on items that had been located inside the victim's purse and car, and the discovery of the firearm used in the offenses inside the car when the car and the Defendant were located. The Court first finds the fact that Defendant's fingerprints were not on the purse was brought out at trial. See testimony of crime scene technician Dena Weiss, Tr. at 501. Second, the evidence of guilt presented by the State at trial did include the positive identification of the Defendant by the victim, the fact that Defendant was found in possession of the victim's stolen vehicle, numerous items known to have been in victim's purse or vehicle did have the Defendant's fingerprints on them, and the fact that the weapon used in the offenses was located inside the victim's vehicle at the time the vehicle was located by

---

[7] Complying with the state speedy trial deadline was not possible because Pullum caused the withdrawal of his first two appointed attorneys and his third attorney, who was appointed shortly before trial was to commence, required additional time to prepare.

> police.  <u>See</u> Tr. at 282, 285, 291, 314, and 692; 566-71; 515-21, and 425
> respectively.  As such, the Court finds Defendant's claim 2 fails to establish
> that he was prejudiced by the fact that he was unable to show the actual
> purse to the jury or that such fact causes the entire outcome of the
> proceeding to be put in doubt.  <u>See</u> <u>Spencer</u>, <u>supra</u>. Therefore, based upon
> the above, claim 2 is DENIED.

(Respondent's Exhibit 17 at 2-3)  The jury learned that Pullum's fingerprints were not found on the purse.  (Respondent's Exhibit 26, vol. IV at 501)  As a consequence, Pullum would realize no benefit by retaining the purse and introducing it into evidence instead of returning it to the victim.  The state post-conviction court correctly rejected this ground because Pullum fails to meet <u>Strickland</u>'s prejudice requirement.  Consequently, the state court's rejection of this claim is not an unreasonable application of controlling federal law as determined by the Supreme Court.

<u>Ground Seven</u>:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to request paraffin tests for the presence of gunpowder.  The state post-conviction court rejected this claim as follows:

> In support of Claim 3, Defendant argues that his counsel was ineffective for
> failing to request that a paraffin test be performed on the victim, the victim's
> purse, or Defendant's clothing in order to establish that he did not fire a
> gun.  In addition, Defendant argues, "[T]here was no proof that Petitioner
> ever touched the gun.  It is therefore only logical that if Petitioner did not
> touch the gun, it therefore, follows that he couldn't have been the person
> who shot [the victim.]"  In response to this last statement, the Court finds
> the argument directly contradicts the jury's special verdict findings in both
> counts 1 and 2; i.e., that he was in possession of or carried a firearm when
> committing the offenses.  <u>See</u> Verdicts, copies of which are attached.
> Therefore, to the extent the claim contests the sufficiency of the evidence
> to support the conviction, the claim is found to have been improperly raised
> in a motion for postconviction relief since such a claim must be raised, if at
> all, on direct appeal.  <u>See</u> <u>Childers v. State</u>, 782 So. 2d 946 (Fla. 4th DCA
> 2001).

In response to the claims that a paraffin test should have been performed on the victim, the victim's purse, and the Defendant's clothing, the Court first finds that if by suggesting a "paraffin" test the Defendant refers to a test to see if gunpowder residue is present, there was such a test performed on the victim's clothing and such test established negative results. <u>See</u> testimony of FDLE analyst Terrance LaVoy, Tr. at 432. As such, the fact that there was no gunpowder residue found on the victim's shirt was presented to the jury for its consideration. Second, there was never a gunpowder residue test performed on the Defendant's clothing because his clothing was never seized for the purpose of testing. <u>See</u> Tr. at 450-51, 543, 549, 577 and 579. Additionally, the fact that Defendant's clothing was never seized for testing was brought out by defense counsel through the cross examination of several of the State's witnesses and argued by defense counsel in his closing statements. <u>See</u> Tr. at 749-53. <u>See</u> <u>also</u> Detective Franson's police report suggesting there was never any clothing to seize, a copy of which is attached. Second, a test on the Defendant's person would not have been performed because the results would have been unreliable because the Defendant was located and arrested more than six hours after the shooting had occurred.[8] <u>See</u> Tr. at 457. Based on all of the above, the Court finds the record directly refutes Defendant's third claim for relief. Therefore, claim 3 is DENIED.

(Respondent's Exhibit 17 at 2-3) The jury was advised that the state performed several tests for powder residue on the victim's clothing and that each test was negative.

(Respondent's Exhibit 26, vol. IV at 430-33) The passage of more than six hours precluded the viability of conducting a paraffin test on either the purse or Pullum's clothing.[9] The state post-conviction court correctly rejected this ground because Pullum fails to meet <u>Strickland</u>'s deficient performance and prejudice test. Consequently, the state court's rejection of this claim is not an unreasonable application of controlling federal law as determined by the Supreme Court.

---

[8] Approximately twenty-four hours elapsed between the shooting and Pullum's arrest.

[9] Testing of Pullum's clothing was not possible because none was preserved as evidence.

Ground Eight:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to obtain the victim's taped statement recorded soon after the shooting. Pullum contends that counsel could have used the statement to impeach the victim during trial. The state post-conviction court rejected this claim as follows:

> In claim 4 of his Motion, Defendant argues that his trial counsel was ineffective for failing to obtain "the alleged victim's taped statement made only hours after the incident took place and impeach alleged victim concerning it." However, the record is completely devoid of such a statement ever being taken. There is a suggestion that a taped statement was taken by Detective Franson during an interview with the victim five days after the incident and while showing the victim two photographic line ups, however, defense counsel obtained the transcript of this statement and utilized it when cross-examining the detective in the case. See Tr. at 707-08. Based on all of the above, the Court finds the record directly refutes Defendant's fourth claim for relief. Therefore, claim 4 is DENIED.

(Respondent's Exhibit 17 at 4) The state post-conviction court correctly rejected this ground because the record refutes Pullum's allegation of deficient performance. (Respondent's Exhibit 26, vol. V at 707) Consequently, Pullum is not entitled to relief on ground eight.

Ground Nine:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to obtain forensic reports. Pullum contends that counsel could have used the reports to impeach the victim. The state post-conviction court rejected this claim as follows:

> Lastly, in support of his fifth claim for relief, that defense counsel was ineffective for failing to obtain "proper forensic reports," Defendant argues that a report of the entry of the bullet, what organs were hit, the physician's report, and expert testimony regarding the distance the gun was fired from and the caliber of gun used are "axiomatic that these are elements needed to find the truth about the distance from the shooter and his identity."

> First, the minimum distance the gun was fired from and the caliber of bullet
> was established through the testimony of witness Terrance LaVoy.[10]  See
> Tr. at 412, 434 and 450.  Second, Defendant fails to allege, and the Court
> fails to discern, how the entry of the bullet, what organs the bullet hit, or the
> physician's report of the victim's injuries could, in any way, establish that
> Defendant was or was not "the shooter."  As such, claim five is found to be
> directly refuted by the record in part, and facially insufficient in part.
> Therefore, for the foregoing reasons, claim 5 is DENIED.

(Respondent's Exhibit 17 at 4-5)  Although Pullum asserts that counsel could have used

the reports for impeachment, the assertion is conclusory because Pullum fails to identify

a specific impeachable item.  The state post-conviction court correctly rejected this

ground because Pullum cannot meet Strickland's deficient performance and prejudice

test.  Consequently, Pullum is not entitled to relief on ground nine.

Ground Ten:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to

depose Detective Franson until two days after trial started.  Pullum identified this ground

as "Claim 5(A)" in his motion for post-conviction relief.  The state post-conviction court

summarily rejected this claim saying the ground "lacks merit and is Denied."

(Respondent's Exhibit 9 at 2)  The appellate court affirmed stating that the claim is

"facially insufficient.  We affirm the denial of th[is] claim without comment."

(Respondent's Exhibit 15 at 2)

After twenty years on the Lakeland Police Department, Detective Franson retired

and moved to Wyoming a couple of months before trial counsel was appointed.[11]  When

---

[10]  An analyst with the Florida Department of Law Enforcement.

[11]  Detective Franson retired February 25, 2000.  (Respondent's Exhibit 26, vol. V at 677)  Trial
counsel was appointed on April 27, 2000.  (Respondent's Exhibit 26, vol. I at 109)

the case was called for trial, defense counsel advised the trial judge that prior counsel

never deposed Detective Franson and that a deposition was still needed.

> MR. SMITH:  I also will tell the court that the lead detective in this case,
> Detective Franson, has retired from the department some time ago and
> lives in Wyoming, and for whatever reason her deposition was never taken.
>
> Mr. Pullum [has] made it very clear to me he wants her deposition taken
> before we put her on the stand or before she's put on the stand, just to get
> an opportunity to find out some things that she was involved in, because
> this obviously is an identify [sic] issue case, and there are a number of
> other factors involved in the case.
>
> But I talked to [the prosecutor] just a little while ago.  Ms. Franson will not
> be here until late this evening.  So there may be a request for an hour or
> two delay in her testimony to give me a chance to depose her and at least
> find out some things.
>
> THE COURT:  Mr. Smith, we'll accommodate you so that you can depose
> that witness.

(Respondent's Exhibit 26, vol. II at 5)  Counsel deposed Det. Franson before she

testified.  (Respondent's Exhibit 26, vol. V at 557)  Pullum fails to show how he was

prejudiced by counsel's not deposing the witness before trial.  Pullum cannot meet

Strickland's deficient performance and prejudice test.  Consequently, the state court's

rejection of this claim is not an unreasonable application of controlling federal law as

determined by the Supreme Court.

Ground Eleven:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to

advise him "of his right to confrontation," and specifically of his right "to be at the

depositions, pretrial conferences, and hearings."  The state post-conviction court

rejected this claim as facially insufficient and the appellate court affirmed.  (Respondent's

Exhibit 11 and 15, respectively)  At trial Pullum erroneously believed that he had the right to confront and cross-examine witnesses even though he was represented by counsel.[12] The trial judge advised Pullum that his right to confront his accusers "is satisfied when you are represented by an attorney if your attorney cross-examines and confronts." (Respondent's Exhibit 26, vol. IV at 439)  The Sixth Amendment right of confrontation applies at trial, not pretrial proceedings.  Nelson v. O'Neil, 402 U.S. 622, 626 (1971). Consequently, the state court's rejection of this claim is not an unreasonable application of controlling federal law as determined by the Supreme Court.

Ground Twelve:

Pullum alleges that his trial counsel rendered ineffective assistance by failing to object when the members of the jury venire were not sworn before voir dire commenced. The state post-conviction court rejected this claim as follows:

> In ground eight, Defendant contends that his counsel was ineffective for not objecting to the trial court's failure to place prospective jurors under oath prior to voir dire.  This claim should have been raised on direct appeal. Moreover, the Court notes that the standard procedure of the Tenth

---

[12]  During one lengthy discussion about Pullum actively participating in the trial (Respondent's Exhibit 26, vol. IV at 393-404), the trial judge cautioned Pullum that trial counsel was a very successful trial attorney and was using successful trial tactics.  After a direct examination concluded, a lengthy discussion ensued (Respondent's Exhibit 26, vol. IV at 437-46) in which trial counsel agreed to ask specific questions drafted by Pullum.  After counsel concluded his cross-examination trial counsel fulfilled his promise to ask Pullum's questions.  (Respondent's Exhibit 26, vol. IV at 452-56)  One of the specific questions asked at Pullum's insistence "opened the door" for the state to present prejudicial evidence. After the witness finished testifying and the jury removed, the trial judge advised Pullum of the prejudice Pullum caused his defense (Respondent's Exhibit 26, vol. IV at 459-60):

> I want you to listen to me.  Okay?  Don't talk.  Listen.

> [The prosecutor] attempted to get in this gunshot residue testimony from [the witness]. That's damaging testimony against you.  Your lawyer stood up and said I object.  He's not qualified to get into that.  And he's right.  I sustained the objection.  You then write an idiot question asking this man to talk about gunshot residue.  [The witness] was allowed to testify regarding the gunshot residue test as a result of the question you asked after your lawyer successfully kept it out of this trial.

Judicial Circuit requires every juror to go through a qualification process prior to entering the courtroom for voir dire, and the prospective jurors are sworn at that time. The record reflects that the jury was sworn in again on the day of the trial, October 24, 2000.

(Respondent's Exhibit 9 at 3)  The appellate court affirmed stating that the claim is "facially insufficient.  We affirm the denial of th[is] claim without comment."

(Respondent's Exhibit 15 at 2)  Pullum cannot meet Strickland's deficient performance and prejudice test.  Consequently, the state court's rejection of this claim is not an unreasonable application of controlling federal law as determined by the Supreme Court.

Accordingly, Pullum's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Pullum and close this case.

ORDERED in Tampa, Florida, on April 21, 2010.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**